Okay, we're going to call the first case, Harry Hamilton versus Nicole Bromley. Mr. Heintz. Good afternoon, your honors. May it please the court, my name is John Heintz and I represent the appellant, Mr. Harry Hamilton, in this matter. Your honor, I would like to reserve three minutes for rebuttal. Granted. Your honors, this appeal presents two issues for the court's review. Whether the district court erred in dismissing Mr. Hamilton's claims on younger abstention grounds and whether this case is moot. Can we take the second issue first, please, Mr. Heintz? Yes, your honor. With respect to mootness, the district court correctly determined that Mr. Hamilton's claims are not moot because there is a reasonable possibility that he will again be subject to the same quickly dissipating injury. In doing so, the court properly relied on... How old is the child? Isn't he about 18 years old now? No, I'm sorry, your honor. I believe that my client's child is 15 years old. Okay. All right, but why is it like... Oh, go ahead, Judge Roth. No, I was just going to say when he turned 18, isn't there a question of guardianship terminated? I believe so, your honor. That's about two and a half years from now. Yeah, okay. All right, but why would we expect... Why is it reasonable to expect that your client will be deprived of custody when he has maintained custody, as I understand it, for over two years continuously? Yes, your honor. My client currently has physical custody of the child pursuant to a one-line order of the state court. I should mention to the court, as far as the appellate record is concerned, the governing order is the April 2015 order from Judge Williamson. I have recently learned that there is a more recent order. It's not substantially different. It's from January 2016. It says that physical custody shall be with the father. Unlike the prior order, which said that the mother was to have no contact, the current order says that the mother can have contact with the child as the child desires. Are you challenging that? No, your honor. I'm simply updating that. All right, but that doesn't help us, I don't think, as to whether the case is moot. Your client has custody for over two years, correct? Correct. So why is it reasonable to believe he will be deprived of that custody? Because he has that custody pursuant to a one-line order in the state court. How many lines do you need? Your honor, my understanding is that a more fulsome custody order would have gone through the various factors, best interests of the child factors, and this is a... It's over three years that he's had custody pursuant to that order, correct? Over two years, your honor. That order was entered in April of 2015, so over two years. But he's had custody for almost three years? No, I mean, the underlying events happened about two and a half years ago, and he maintained physical custody since sometime... Okay, but when this lawsuit was filed, he had neither custody, and the child was with Children and Youth at the facility where... What's the name of it? Youth Haven? Youth Haven, correct, your honor. That's when this lawsuit was filed, in November, correct? That's correct, yes. So circumstances have changed dramatically since the time this suit was filed. Yes, your honor, and I think that actually goes to a reasonable expectation that circumstances could similarly change dramatically over the next two and a half years. How? My client's mother is involved in his life. She is now starting to... I'm sorry, my client's child's mother sees the child from time to time. My client and his wife are... I'm sorry, and the child's mother are not on speaking terms. There's continued domestic strife between my client and his child's mother, and... So in three months, something might go wrong between your client and the ex-wife? I'm sorry, in three months, your honor? Well, in the future, something might go wrong, right? Certainly. And if something does go wrong, there would be certain behaviors or facts associated with that, right? Yes, your honor. And you would have to plead those facts in a new complaint to seek judicial relief, would you not? I don't think so, your honor. I mean, my client has already suffered an injury, and he is now seeking relief to address the injury that he suffered. He's not seeking damages? Correct. He's seeking declaratory relief? Yes, your honor. That's forward-looking relief? Yes, I think that... And you want us to opine now and give you a declaration, forward-looking relief, about some unknown problem that you believe will occur in the coming months with the ex-wife? Well, your honor, I think that a declaration would say something to the effect of what the defendants did in November of 2014 violated my client's constitutional rights, and would create some sort of minimum standard of conduct that they cannot go below in the future. In other words... But in the future, now that your client has custody of the child, and before he did not have custody, and just that difference in the situation might make if we had the same dispute would be a factor in a different outcome, I think. So because of the custody, it's not the same situation that it was two and a half years ago. Well, your honor, my client did not have primary physical custody of the child at the time of the events underlying this suit, but the state... And now he does? Yes, your honor. But even in the absence of formal custody rights, the state still acknowledged that my client had a right and an opportunity to visit his child at Youth Haven. Initially, they were willing to facilitate such contact, and then, you know, as the record reflects, in response to complaints that my client made about the conditions of Youth Haven, sort of at the snap of the fingers, decided to completely terminate his rights without any sort of process or procedure. So when you filed this suit, you were asking for injunctive relief,  or when your client filed it, to be more correct. And injunctive relief is obviously out the window, and your client is not asking for injunctive relief. They're asking for a declaration of something that may happen in the future. I think it would be a declaration about something that already has happened in the past, and is reasonably expected to recur in the future. And you're not seeking damages based on what happened in the past? Correct, your honor. Okay. It sounds to me that this is very close to what the Supreme Court has decried as an advisory opinion, which we're not in the business of giving. Well, I would respectfully suggest, your honor, that this case is very similar to this court's opinion in Winston v. Children and Youth Services of Delaware County. It was structurally identical where the child was removed from the parent's custody, and the parents filed a 1983 suit alleging that that violated their constitutional rights. While the case was pending, the father regained physical custody of the child. And both the district court and this court in that case said that the fact that the father had regained physical custody of the child did not moot his claim for declaratory relief, because his injury was reasonably expected to recur. Is your client subject to monitoring conditions by the state court? Not that I'm aware of, your honor. But they were in Winston? Yes, the custody was returned to the parents subject to conditions. And did CYS forcibly take your client, the child from your client? No, your honor. But that happened in Winston, right? Yes, the parents were not... The parents were indisposed at the time, and the state pursued into a hearing to custody of the child. And also in Winston, the parents challenged specific policies of CYS that they thought infringed their constitutional rights, correct? They challenged the visitation policies. I don't know that it was a sort of... I think it was still a bit of a moving target in Winston like it is here, where the court said that... What's the policy that you challenge here? Respectfully, your honor, I think it's sort of the no policy policy. My client pleads that he alleges that he asked Youth Haven for the visitation rules, and that they told him that there were none. He showed up pursuant to a scheduled meeting a couple of days later, and made certain complaints. And the next morning, got a phone call from Ms. Bromley that said, under threat of police involvement, you are no longer allowed to have contact with your child. Can you cite any cases from this circuit or other circuit courts that have held that a constitutional tort can be successfully pleaded that claims that a government entity has no policy? I cannot off the top of my head, your honor. What I would suggest is that the policy is that it was visitation at the discretion of the state employees. And that the policy allows the state employees to terminate rights. That's not written anywhere. Correct, and I think that... So you're saying, I mean, now you're saying something different. A minute ago, you said the policy problem is that there was no policy. Now you're saying, maybe you're saying it was a practice of the county? I guess what I'm trying to say, your honor, is that the policy seems to be that there are no strict rules or requirements, but that the state, at any moment... But that's the absence of a policy, right? That means that they do it on an ad hoc basis as the professionals in CYS deem appropriate. And here, my client alleges, the way that they enforced that policy was a clear violation of his constitutional rights. And the lack of a policy is precisely why he needs a declaratory relief in this case. Because the defendants need to be told what they can and cannot do to violate or not violate my client's constitutional rights. Mr. Heintz, I want to ask you about the order of these issues. You stated there are two issues. Correct, your honor. And you said mootness was second. Correct, your honor. Younger abstention being first. Correct. Don't we have an obligation to first look at and examine our jurisdiction before we get to the question of abstention? You certainly have an obligation to determine that you have jurisdiction, yes. I started my argument with younger because that was the sole basis of the district court's decision. Okay, so would you agree with that statement that we first need to look as to whether or not this case is moot before we move on to the question of younger abstention? Yes, your honor. Okay. When you're talking about younger abstention, what is your argument on that? Is the district court correct in abstaining under younger? No, your honor. I think in the wake of the Supreme Court's decision in Sprint, I think the district court made a clear legal error in determining that this category was appropriate for younger abstention. And this would be the third prong under Sprint? The third Sprint category, yes, your honor. Civil proceedings involving orders uniquely in furtherance of the state court's ability to enforce their judicial functions. And that really goes to the sort of the bag of tricks that the state courts have to enforce or compel compliance with its orders. Can you think of a type of custody order that might fit into that third prong? Your honor, may I answer your question? A specific custody order, no. I think in this case, how it would fit into the third prong is if Mr. Hamilton was violating a custody order and the court tried to hold him in contempt and he sued and said this contempt proceeding violates my constitutional rights. Thank you, your honor. Before you sit down, Judge Roth, do you have any other questions of Mr. Hines? No, I don't. All right, thank you. Thank you, your honor. We'll now hear from Mr. Daley on behalf of Judge Lunsford. May it please the court. Good afternoon, your honors. My name is Michael Daley on behalf of the appellee, the Honorable Bradley Lunsford. In this case, I'm going to just address the mootness argument. We've divided our time for five minutes for each of us. As the court has pointed out, there's no reasonable expectation that the injury suffered by Mr. Hamilton in this case could occur again. As the Supreme Court says, the capable of repetition yet evading review is a very narrow exception only for exceptional circumstances. Do you agree that we need to look at our jurisdiction first before we move to abstention? Yes, your honor. Yes, I do. So as Judge Roth had pointed out and Judge Hardiman, there's been a sea change of facts because at the time, custody was with the mother and I believe the father had visitation rights. Now that Mr. Hamilton's had full custody for over two years, the first order that we saw that referenced custody with the father was a February 2, 2015 order. So we have an isolated incident that happened two and a half years ago that hasn't happened since. In addition, unlike the Winston case, unlike the Tucker case, which we cite, which actually held that that case was moot, and many other cases with declaratory and injunctive relief, there's normally a policy or procedure in place so that the court can say, okay, there's this policy and procedure. What about Mr. Heintz's argument that there's an absence of a policy and that's the problem? I'm not aware, your honor, of any authority for that. I think what happens here is if it's an isolated incident, then it's, you can't reason, the court can't reasonably expect that this would happen again. Because we don't, A, we don't, I'm not exactly sure what the claimed deprivation of Mr. Hamilton's rights are. It was unclear in the district court. Well, it's that he didn't get a chance to exercise parental control of his son while he was at Youth Haven. Isn't that the crux of the claim? I believe that that's been clarified on appeal now, that while he was at Youth Haven that his contact was cut off for allegedly violating Youth Haven's procedures. So, Judge Hardiman, as you pointed out, the Winston case was different. Not only was there a policy in place, there were restrictions on the custody when it came back to the parents. And the parents also, I think one had substance abuse issues, the other one had psychiatric issues. So it was reasonable for a court to conclude in that case that it may come back. And the person may be subject to that policy again. We cite the, excuse me, the Tucker case, Your Honor, from 2007 in this court. That had to do with an evaluation policy that a court conciliation had in Bucks County. While the federal litigation was pending, the parties, it was a dispute between the mother and father. They resolved the custody determination. And this court concluded that it was moot because there was just too many, as it set forth in the brief, there was just too many circumstances. The confluence of things would have to happen in order for the father to be subject to the alleged harm again. Isn't there ongoing litigation in the state court between father and mother? The only ongoing litigation I'm aware of, and I believe it may have just ended, was related to equitable distribution. No custody litigation? Not that I'm aware of. According to the doc, and actually I wasn't aware of the January recent order. The last order is the substantive order that I saw was from April 2015 from Judge Williamson. So that's, as far as I'm aware, the last custody proceeding that took place, or custody order on the docket. They have been debating equitable distribution issues. But there's still a possibility that the acrimony will continue and that mother would seek to have custody altered, right? Yes, of course, Your Honor. And if that happened, I assume your answer is that, well, if Mr. Hamilton felt like his rights were violated in a constitutional sense, at that time, the courthouse doors are open and he's free to file something at that time. Exactly, Your Honor. Yes. At this point, declaratory relief, as the court aware, is discretionary. It's not proper for this court to say that what may have happened in the past violated somebody's rights if there's not an ongoing continuing effect. I cite the cases, Your Honor, the Pryor and Armstrong cases that talk about declaratory relief shouldn't be granted if there's too many contingencies that something may happen as anticipated or happen at all. And lastly, Your Honor, as it relates to Judge Lunsford, this seems to be an official capacity claim, as far as I can tell. It's not clear. And certainly, without an ongoing continuing violation of federal law, any official capacity claims against any state judges are going to run into Eleventh Amendment. Next Part, Ted Young is not going to apply to those, which again, I cite in the brief. And he's off the bench anyway. He's off the bench at this point, Your Honor. Yes. All right. Judge Roth, anything further for Mr. Daly? No, I don't. Thank you, Mr. Daly. Thank you. We'll hear from Mr. Johnson on behalf of Bromley on the Younger Center County Children's Services. Thank you, Your Honor. Good afternoon. My name is James Johnson, and I do represent Nicole Bromley and Center County Children and Youth Services. And this part of the argument for my time is going to be directed to the Younger immunity issues as initiated in Sprint. I admit Sprint was not talked about in the lower court decision, and that's probably a fault that we could all lay on ourselves. But we believe the record does establish the Sprint type of issues are satisfied, especially the third problem. Let me ask a procedural question on that, Mr. Johnson. Assume for a minute that you're correct on that. Wouldn't it still be prudent for this court to remand the case? We're not in the business typically of evaluating those tests in the first instance. And it would be helpful to this court, would it not, to have the district court go through the process of applying the Sprint decision to the facts of this case? At first blush, Your Honor, that does sound reasonable, but I think the facts as they are established already satisfy the third prong of Sprint. The name wasn't put on it in the decision, but the facts such as the custody order that the court, the state court issued directed to the appellant not only demanded that the child be returned to the mother, but also ordered the police to carry out and enforce the order if necessary. So that seems to me to be well within the confines at least of the furtherance of an order that's almost quasi-criminal. Not many custody orders say we want the police to go with this order to make sure that it's enforced. And so did the district court misinterpret the Middlesex factors in deciding to abstain here? They let the Middlesex factors out. They just didn't mention the third prong specifically. The third prong. What I'm trying to say is those facts existed. They didn't point to them. But this court has the ability to, you know, make sure that the record is correct as far as the substance. You made reference to this being a quasi-criminal matter. That wouldn't get you into the third prong. The third prong would be pending civil proceedings involving certain orders. But the decision of ACRA, Turk Club, Third Circuit seminal case on the Sprint analysis indicates that when we're looking at a state court proceeding, we're not just going to look at the state court, typical run-of-the-mill case. We want to make sure that it's almost arising to the point of something that is commanding the individual to do. Something like a contempt. That also was mentioned in that proceeding. That case dealt with the second prong. I'm not sure. I think it did. Okay. But the original opinion, your original statement had to do with did the district court get it wrong by utilizing the wrong case? The middle section, yes. And again, it's my argument that they got it right because the factors were there to back that up. And if you look at... Do you think Younger's a better argument for you than Mootness? No. I would think Mootness is a better argument because it's more practical. Why the focus on Mootness now than not in the district court oversight? Or did you push that argument hard and the district court just wasn't able to? We didn't push it hard. We thought that the immunity argument was much stronger. That was the basis of... The immunity argument? Yes. I mean, I'm sorry, the... The Younger argument? The Younger argument. Abstention? Yes. The abstention argument was much stronger. Because there's a history of 10 years of custody cases involving these parties. Okay. And when we looked... Those of us from Center County are well aware of what's going on with these parties for a long period of time. And it just cried out for that type of argument because, you know, all the judges abstained. And there's a reason why they abstained after a while. Federal courts aren't the business of being appellate courts for state court custody. Exactly, Your Honor. All right. But you'd agree, would you not, that the pendulum has swung a little bit, at least, back in the other direction based upon the Supreme Court's decision and spread? I would agree with that, Your Honor. And I think, therefore, we do need to look at the strength of that state court proceeding. It has to be more than just, as counsel said, a one-line order that doesn't seem to have the kind of guts and bite that you need. In this particular case, it was more than that. Okay. All right. Thank you, Mr. Johnson. Thank you. Now, we'll hear from Ms. Marshall on behalf of Youth Haven. Good afternoon, Your Honors. I'm Amy Marshall representing what is, correctly, Center County Youth Service Bureau, which is the operator of Youth Haven, which is the youth shelter where the juvenile resided. At issue, as counsel has already mentioned, the lower court, and I think we are all in agreement, erred by not addressing the Sprint case and the factors set forth in Sprint. And as we now argue in our brief, although Sprint was not specifically mentioned, the facts are there to support that this case falls within the third category of the Sprint exceptions. Specifically, if you look to what Mr. Hamilton was arguing, we have an order of emergency custody put in place on November 10 as a result of the child not returning from the father's custodial visit. The child then makes an allegation of abuse, which I think is important to note factually, which is how the child ends up in the care of Youth Haven, because neither parent is able to agree as to a third party to be able to monitor the child's welfare while CYS is able to do a complete investigation. And so what Mr. Hamilton is complaining about, we actually question what due process violation there might be. There is no policy or procedure he's articulated. The action actually stems from direct court action on the part of an emergency petition being granted and an investigation from CYS, which we think clearly puts the case into the third category of Sprint as the state carrying out its judicial function on a family matter. What involvement does your client have at this time? My client has no involvement. So why isn't it moved? I would agree that the best argument we have is that it's moved. And at the district court level, the argument we made was that it was moved. Is there a chance that the minor would be placed again at your client? There could be the potential, I think. How would that happen? Tell us. I know you don't necessarily want that to happen, or maybe you're indifferent about it. I don't know. But how would that happen? It's actually a voluntary placement. So quite frankly, the juvenile would have been free at some point in time to have left the facility. It is a voluntary placement. He was not placed there pursuant to a court order. It was agreed upon by the parents, primarily mom, who had emergency custody at the time under that November 10 order, which placed him in the care of Youth Haven. So it was a voluntary placement. I think the concern arises from Mr. Hamilton when he's no longer able to contact his child there. We do have sort of a conflict of facts, Your Honors, in that we believe Mr. Hamilton was offered the policies from Youth Haven, chose not to review them, and then when he was in violation of them, was complaining about the fact that his contact was cut off only while he was at the center, mostly for the protection of the other children who were at the center at that time. So the only way the minor gets back to your client is if there's a voluntary placement? Correct. He was not forced there. That was a decision by the parties mutually agreed to. The other case that I think that this is analogous to would be the Carl Cifuentes case in opposition to the Edelglass, New Jersey case. I think it more mimics the Carl analysis in that particular case. Mr. Carl had a lower state court temporary order of custody. He was concerned about his children being taken out of the country by his, whether it was his ex-wife or his wife at the time, and was seeking relief from the federal court to more or less endorse that as a, what I'll say, a stronger enforcement of the order by the U.S. Marshals. I think Mr. Hamilton is seeking to have the federal court come in and interrupt what is clearly a state court issue in that emergency petition and the investigation by CYS versus what you saw the court review in the Edelglass versus New Jersey, which was truly more of a due process argument. The plaintiffs, that was a class action, and the plaintiffs were arguing about the state of New Jersey's family court process, the lack of notice of hearing, the inability to cross-examine the other party, the inability to add additional evidence into the record, all clearly falling much more specifically into a due process argument on a systemic issue within their court system than what we have here. Our argument is Mr. Hamilton wanted the federal court to come in and sort of overtake the outcome that he didn't like from the state court. Thank you, Ms. Marshall. Mr. Hines, rebuttal. Thank you, Your Honor. I have four quick points to make on the mootness before turning very briefly to Younger. To the question about this policy, the no policy policy, to be clear, there has been no discovery yet in this case. My client's case claims were dismissed on a motion to dismiss. Fact discovery could very well shed light on what exactly you think. We see a lot of these cases where, you know, someone can plead there was a policy. Either there's a policy in writing, which you haven't pleaded. You could have found that, right? Perhaps, Your Honor. I mean, my client alleges that he was offered, that he asked what the policy was and he was told that there wasn't one. But you're talking specifically about the Center County policy. Well, this was a youth haven, Your Honor. Okay. The shelter. Well, but youth haven is run by CYS. Correct. So I think that would affect both parties. Okay. But are you talking about strictly the youth haven slash Center County policy? Are you talking about state policy? Specific to Center County and youth haven, Your Honor. Okay. So I think that additional discovery would help answer that question. The second point is, you know, as counsel for Judge Lunsford mentioned, there has been a sea change of facts in this case over- Let me just go back to that. So it goes back to my prior question as to what you're seeking. So you get the answer as to what the policy is. What are you going to do with it? My client would like- How does it affect the outcome of this litigation? My client would like a declaration that says that the complete severance of his paternal contact at the snap of the fingers with no process or procedure violates his liberty interest to direct the care and upbringing of his child. So that on the reasonable expectation, when his child ends up there at some point over the next two and a half years, CYS and youth haven cannot- Can you really blame that on CYS and youth haven? Or did you blame that on the court? Well, an officer of the court is a defendant in this case, Your Honor. Well, yeah, but they're not one and the same. They are co-defendants, but youth haven is an agency where the children go, where the children live their house. Correct. Okay. Nothing happened if it hadn't been for the court. I'm not sure that's necessarily true, Your Honor. I mean, I think that youth haven and CYS interact with children. There could have been no pending custody proceedings and had my client's son decided to flee his mother's house and go directly to youth haven, and then my client shows up and wants to have contact with him and they say, no, we don't like your complaints. You have to leave. That would have been the same substance of his claim, the violation of his parental rights without any court involvement at all. Okay. I guess I'm still struggling to find out how that answer impacts this lawsuit. Because this lawsuit is about the severance of his paternal contact in a- In the future. In the future. In the future. Correct. On the reasonable expectation, just as the court found in Winston that- And again, there's a chain of events that need to occur. There needs to be some sort of strife between child and father and or child, father and mother. That's step one, right? Yes, Your Honor. Step two is that the county, the wheels of the state get involved in that strife. Yes, Your Honor. Step three is that the wheels of the state somehow choose to mediate that strife by placing this child at Youth Haven again. Or another shelter. Or another shelter. And then step four is that that shelter does not afford your client the appropriate access to see his son. Yes, Your Honor. And I think that all of those same elements were at play in Winston. Okay. All right. I think we understand your argument very well. Judge Roth, do you have anything further of Mr. Hines? No, I don't. Okay. Thank you, Mr. Hines. Thank you to all counsel for the excellent argument. And again, the court thanks you for your patience this afternoon. We're going to take a very brief recess while the next case is getting set up. Oh, I'm sorry, Mr. Hines, you're pro bono, is that right? Yes, Your Honor. Well, thank you for serving pro bono and helping the court in this matter. Thank you for the opportunity, Your Honor.